In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00016-CV


______________________________





IN RE: PATRICIA KARIN BRADFORD









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter








MEMORANDUM OPINION



 Patricia Karin Bradford has petitioned this Court for a writ of mandamus. Bradford had filed
a special appearance in the trial court following a petition for divorce filed by Bradford's husband,
Floyd Elton Bradford. The trial court overruled Patricia's special appearance and ruled that it had
jurisdiction over Patricia's person. In her request for mandamus relief, Patricia would have us
compel the trial court to vacate its order, grant the special appearance, and dismiss Floyd's petition
for divorce. We decline to do so.

The Parties' Marriage

 The parties agree on general facts regarding their marriage. (1) They were married in
October 1970 in Montana. Floyd was a member of the United States Air Force, and the parties lived
together in most of the places he was stationed, including North Dakota, Idaho, Japan, and Fort
Worth, Texas; they lived on an Air Force base in Fort Worth from March 1978 to December 1979. 
The couple lived in North Dakota from 1982 to 1999, when Floyd moved to Arkansas. Floyd moved
to Lamar County, Texas, where he had grown up, in 1999 or 2000. 

 Floyd has purchased real property in Lamar County and resides there. He filed his petition
for divorce July 3, 2006. Patricia continues to reside in North Dakota. She filed her own suit for
divorce in North Dakota on or about July 24, 2006. Floyd asserts that the family "visited
regularly . . . in Texas" during the marriage, "at a minimum . . . once a year." However, Patricia
provides more detail, listing seven occasions from December 1981 to June 1997 when the couple
visited for holidays, funerals, and the like. She claims not to have been to Texas since 1997. The
parties seem to agree that, since Floyd moved to Texas, they have corresponded via mail and
telephone only. 

Mandamus Is Extraordinary Measure

 Mandamus is an "extraordinary" remedy that is "available only in limited circumstances."
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Mandamus is appropriate
"only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is
no other adequate remedy by law." Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex.
1985) (orig. proceeding). Generally, increased cost and delay alone do not make an ordinary appeal
an inadequate remedy. Walker, 827 S.W.2d at 842. Because in the ordinary case no circumstances
apart from the increased cost and delay of trial and appeal are present, mandamus typically will not
lie from the denial of a special appearance. See Canadian Helicopters Ltd. v. Wittig, 876 S.W.2d
304, 307 (Tex. 1994) (orig. proceeding). 

 The Texas Supreme Court, however, has recognized that, in some situations, a challenge to
personal jurisdiction cannot be adequately remedied on appeal. CSR Ltd. v. Link, 925 S.W.2d 591,
596 (Tex. 1996) (orig. proceeding). An ordinary appeal may be inadequate in cases involving
conservatorship or support of children. Proffer v. Yates, 734 S.W.2d 671, 673 (Tex. 1987) (orig.
proceeding); Hutchings v. Biery, 723 S.W.2d 347, 350 (Tex. App.--San Antonio 1987, orig.
proceeding). (2) In addition, there may be other "extraordinary situations" in which the denial of a
special appearance cannot be adequately remedied on appeal. (3) Link, 925 S.W.2d at 596. The court
maintains, though, that the exercise of the power of mandamus "is justified only when parties stand
to lose their substantial rights," In re TXU Elec. Co., 67 S.W.3d 130, 135 (Tex. 2001) (orig.
proceeding) (quoting Walker, 827 S.W.2d at 842), that is, rights personal to the party seeking relief. (4)
 

 This case does not meet the requirements for such extraordinary relief. While Patricia does
offer argument, supported by her affidavit, that she has health issues which would make travel to
Texas inconvenient and uncomfortable, such statements do not show that she would lose substantial
rights unless mandamus is granted or that she does not have an adequate remedy by appeal. Her
petition asks us to order the divorce action to be dismissed in its entirety. She does not dispute that
Floyd has resided in Lamar County for several years. A district court in Lamar County could have
jurisdiction to grant his requested divorce and to adjudicate property rights in Texas. A court may
exercise jurisdiction, in a suit for dissolution of marriage, over those matters in the suit for which
the trial court has authority. Tex. Fam. Code Ann. § 6.308 (Vernon 2006); see also Dawson-Austin
v. Austin, 968 S.W.2d 319, 324-25 (Tex. 1998). There, the Texas Supreme Court held that the trial
court had jurisdiction to grant a divorce where one party was a nonresident of Texas, but lacked
jurisdiction "to determine the managing conservatorship of children or divide property outside the
State of Texas." Austin, 968 S.W.2d at 324. 

 We do not believe Patricia has shown her remedy by appeal to be inadequate. This case
involves no child conservatorship or visitation issues, but rather, only a divorce and division of
property issues. Patricia has the right to appeal any decision of the trial court, including
jurisdictional issues. We do not find this case to be one warranting the extraordinary remedy of
mandamus, and accordingly we deny Patricia's request for relief. 

 We further deny the motion to stay the proceedings in the trial court. 




 Jack Carter

 Justice


Date Submitted: February 15, 2007

Date Decided: February 15, 2007

1. Our rendition of factual allegations is derived from affidavits filed by the parties in the trial
court. 
2. Texas courts have recognized that, because of the special interests involved in custody cases
and the lack of appeal for temporary orders, mandamus is proper to review the trial court's improper
assumption of jurisdiction in such matters. In re Barnes, 127 S.W.3d 843, 846 (Tex. App.--San
Antonio 2003, orig. proceeding) (citing Little v. Daggett, 858 S.W.2d 368, 369 (Tex. 1993)). There
is no allegation of a custody dispute in the Bradfords' case. Cf. In re Alley, 1 S.W.3d 268 (Tex.
App.--Texarkana 1999, orig. proceeding).
3. For example, a case involving sovereign immunity (United Mexican States v. Ashley, 556
S.W.2d 784 (Tex. 1977)).
4. We also point out that, while the Legislature, subsequent to Canadian Helicopters, provided
for interlocutory appeal of denials of special appearances, that legislation specifically exempted cases
brought under the Texas Family Code. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon
Supp. 2006). 




guilty in a court of competent jurisdiction." Tex. Const. art. I, § 14; see Tex. Code Crim.
Proc. Ann. art. 1.10 (Vernon 2005). 
          The Double Jeopardy Clause in the Fifth Amendment embodies several concepts: 
it protects a person from being twice prosecuted for the same offense; it precludes the
state from prosecuting someone for the same offense or a lesser-included offense after
a jury has acquitted the accused; and it bars punishing a person more than once for the
same offense. Ex parte Infante, 151 S.W.3d 255, 260 (Tex. App.—Texarkana 2004, no
pet.) (citing Monge v. California, 524 U.S. 721, 727–28 (1998)). The Fifth Amendment's
Double Jeopardy Clause is enforceable against the States through the Fourteenth
Amendment. Infante, 151 S.W.3d at 260. Conceptually, the United States and the Texas
double jeopardy provisions are identical. See Stephens v. State, 806 S.W.2d 812, 815
(Tex. Crim. App. 1990). King apparently relies on that aspect of the Double Jeopardy
Clause precluding the State from prosecuting a person for the same offense after a jury
has acquitted that person.
          We must first decide if it is permissible for King to raise the issue of double jeopardy
for the first time on appeal, thus collaterally attacking his original sentence on that basis. 
The general rule is that, in an appeal from revocation of community supervision, an
appellant may raise issues relating to the original plea proceeding only in appeals taken
when community supervision was first imposed. Manuel v. State, 994 S.W.2d 658, 661
(Tex. Crim. App. 1999); Whetstone v. State, 786 S.W.2d 361, 363 (Tex. Crim. App. 1990). 
However, a judgment that is void is an exception to the general rule. Nix v. State, 65
S.W.3d 664, 667 (Tex. Crim. App. 2001). 
          A judgment is void in very rare situations, usually due to a lack of jurisdiction.


 The
question of whether double jeopardy is a jurisdictional defect has not been decided by this
Court. If we determine that it is, and if King is correct that the judgment adjudging him
guilty of taking a weapon from a peace officer was in violation of the prohibition against
double jeopardy, then the trial court was without jurisdiction and such judgment, and the
order placing him on community supervision pursuant to that judgment, are void. Under
those circumstances, King may raise the issue of double jeopardy for the first time on
appeal. Ex parte Seidel, 39 S.W.3d 221, 224 (Tex. Crim. App. 2001) (lack of jurisdiction
over case renders judgment void and it may always be collaterally attacked). If, on the
other hand, we determine that double jeopardy is not a jurisdictional defect, then the trial
court was not without jurisdiction (even if King is correct in his claim of double jeopardy),
and he was required to raise that issue at the time he was placed on community
supervision, and having failed to do so, he cannot now raise it for the first time on appeal. 
          The Texas Court of Criminal Appeals has declined to rule that double jeopardy is
a jurisdictional defect. See Haight v. State, 137 S.W.3d 48, 49 n.5 (Tex. Crim. App. 2004);
Harrison v. State, 767 S.W.2d 803, 804 n.1 (Tex. Crim. App. 1989) . The Austin Court of
Appeals has determined that, until the Texas Court of Criminal Appeals holds otherwise,
the Austin court will treat double jeopardy claims as nonjurisdictional errors. Yount v.
State, No. 03-96-00565-CR, 1998 Tex. App. LEXIS 25 (Tex. App.—Austin Jan. 8, 1998,
no pet.) (not designated for publication) (citing Berrios-Torres v. State, 802 S.W.2d 91, 94
(Tex. App.—Austin 1990, no pet.)). The Waco Court of Appeals has also concluded that
double jeopardy is a nonjurisdictional defect. Ramirez v. State, 36 S.W.3d 660, 663 (Tex.
App.—Waco 2001, pet. ref'd). Other courts of appeals have reached the opposite
conclusion. Okigbo v. State, 960 S.W.2d 923 (Tex. App.—Houston [1st Dist.] 1998, pet.
ref'd); Cole v. State, 776 S.W.2d 269 (Tex. App.—Houston [14th Dist.] 1989, no pet.);
Rodriguez v. State, 750 S.W.2d 906 (Tex. App.—Corpus Christi 1988, pet. ref'd); Harrison
v. State, 721 S.W.2d 904 (Tex. App.—Dallas 1986), vacated & remanded on other
grounds, 767 S.W.2d 803 (Tex. Crim. App. 1989).
          We now align ourselves with those courts holding that double jeopardy is a
nonjurisdictional defect and agree with the Waco court that "it is more accurate to say that
the double jeopardy clause may deprive the second proceeding of being a valid conviction,
but does not deprive the trial court of its jurisdiction over the matter." Ramirez, 36 S.W.3d
at 663.
          Even if King could complain in this appeal that the original proceeding in which he
pled guilty violated the prohibition against double jeopardy, he must still preserve the
complaint for our review. Generally, a timely objection is required to preserve error for
review. See Tex. R. App. P. 33.1. King therefore had the burden to preserve, in some
fashion, a double jeopardy objection at or before the time the issue of his guilt was
submitted to the trial court to decide. See Gonzalez v. State, 8 S.W.3d 640, 642 (Tex.
Crim. App. 2000). This he failed to do—he failed to object to the second prosecution
before he was adjudged guilty by the trial court. Further, he made no special plea "that he
has already been prosecuted for the same or a different offense arising out of the same
criminal episode that was or should have been consolidated into one trial, and that the
former prosecution" resulted in an acquittal. See Tex. Code Crim. Proc. Ann. art. 27.05
(Vernon 1989). Even at the hearing on the State's motion to revoke community
supervision, King pled true to the alleged violation and still did not raise the issue of double
jeopardy. King did nothing before, during, or after being placed on community supervision
to preserve the error he now raises on appeal. He cannot accept the benefits of
community supervision and then complain of double jeopardy for the first time after that
supervision is revoked. The Texas Court of Criminal Appeals has held that a defendant
may waive the right not to be twice placed in jeopardy for the same offense. Ex parte
Birdwell, 7 S.W.3d 160, 163–64 (Tex. Crim. App. 1999). We conclude King waived this
right by not timely asserting it. 
          Nonetheless, because of the fundamental nature of double jeopardy protections,
a double jeopardy claim may be raised for the first time on appeal or for the first time on
collateral attack when (1) the undisputed facts show the double jeopardy violation is clearly
apparent on the face of the record, and when (2) the enforcement of the usual rules of
procedural default serves no legitimate state interests. Gonzalez, 8 S.W.3d at 643.
          In Barnett, this Court held that a double jeopardy violation was apparent from the
face of the record. Barnett v. State, 83 S.W.3d 810, 813 (Tex. App.—Texarkana 2002, no
pet.). There, the first trial ended in a mistrial granted at the defendant's request after the
prosecutor, having been repeatedly warned and admonished, offered into evidence
materials he was expressly instructed not to mention. Id. at 812–13. After dismissing the
first jury, the trial court immediately summoned another venire and proceeded with the
retrial. Id. at 813. Relying on Gonzalez, we held that "successive petition" claims are
sufficiently apparent from the record to have violated the double jeopardy clause to be
adequately raised and considered on the merits on appeal. Id.
          Barnett is distinguishable from the case at hand. King was not subjected to a
successive petition prosecution. King pled guilty to an indictment that on its face described
an offense separate from the offense in the indictment charging him with assault on a
public servant. The United States Supreme Court has held that a defendant who pleads
guilty to "two counts with facial allegations of distinct offenses" may not raise a successive
prosecution claim for the first time on collateral attack primarily because this would have
required "further proceedings at which to expand the record with new evidence." United
States v. Broce, 488 U.S. 563 (1989). King relinquished any opportunity to receive a
factual hearing on a double jeopardy claim. Absent such record, he cannot prove his
double jeopardy claim by merely relying on the two indictments and the existing record.


 
Thus, King cannot collaterally attack the second prosecution for the first time on appeal
because further proceedings at which to expand the record with new evidence is required. 
There is no double jeopardy violation clearly apparent on the face of the record. 
          Further, requiring King to have timely raised his double jeopardy claim at the trial
court level serves legitimate state interests. Such interests were clearly stated by the
Amarillo Court of Appeals (and quoted by the Waco court in Ramirez):
The State has a valid interest in avoiding problems which would
interfere with its lawful prosecution of alleged crimes and in being able to
research and prepare responses to claims of double jeopardy. It also has a
valid interest in being able to investigate and present any evidence which
might exist that supports or controverts claims of double jeopardy in order
that prosecutions be dismissed and that valid prosecutions continue when
it is proper to do so. It has a valid interest in conserving valuable judicial time
by not going through unnecessary trials when a double jeopardy claim is
valid.

Casey v. State, 828 S.W.2d 214, 218 (Tex. App.—Amarillo 1992, no pet.).

          Because King's alleged double jeopardy violation is not clearly apparent on the face
of the record, and because requiring him to have timely raised this alleged violation at the
trial court level serves legitimate state interests, King cannot now raise it for the first time
on appeal.
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      February 23, 2005
Date Decided:         April 5, 2005

Publish